UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPY OPTIC INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>AREATREND, LLC, an Ohio Limited Liability Company; and DOES 1-10,<br><br>Defendants. | Case No.: 3:19-cv-01770-WQH-BLM<br><br>**ORDER** |

HAYES, Judge:

The matter pending before the Court is the Motion to Dismiss filed by Defendant AreaTrend, LLC (ECF No. 7).

**PROCEDURAL BACKGROUND**

On September 16, 2019, Plaintiff Spy Optic Inc. ("Spy Optic") initiated this action by filing a Complaint against Defendant AreaTrend, LLC ("AreaTrend") for (1) federal trademark infringement and counterfeiting; (2) federal false designation of origin; (3) tortious interference with existing contractual relations; (4) California common law trademark infringement; (5) California common law unfair competition; and (6) California statutory unfair competition. (ECF No. 1). On October 24, 2019, Defendant filed a Motion to Dismiss for lack of personal jurisdiction. (ECF No. 7). On November 18, 2019, Plaintiff

filed a Response in opposition. (ECF No. 12). On November 19, 2019, Plaintiff filed a Supplemental Declaration in opposition. (ECF No. 13). On November 25, 2019, Defendant filed a Reply. (ECF No. 14).

## ALLEGATIONS OF THE COMPLAINT

Plaintiff engages "in the extensive development, advertising, and marketing of sunglasses, sunglass products, wearing apparel and sporting goods." (ECF No. 1 at 3). Plaintiff "uses and has used the trademarks 'SPY', 'SPY OPTIC' and a cross logo, among others, in connection with its goods and/or services" (collectively, "Spy Marks"). *Id*. The Spy Marks "are valid, subsisting, in full force and effect, and are incontestable pursuant to 15 U.S.C. § 1065." *Id*. at 4. Plaintiff has "continuously used the S[py] Marks in interstate commerce in connection with the sale, distribution, promotion, and advertising of genuine Spy Optic® products since their respective dates of first use." *Id*. "The Spy Marks have never been abandoned." *Id*. Plaintiff has "expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Spy Marks." *Id*. The Spy Marks "are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Spy Optic." *Id*. The Spy Marks "have achieved secondary meaning as an identifier of high-quality sunglasses, sunglass products, apparel, and sporting goods." *Id*. The Spy Marks "have come to symbolize the enormous goodwill of Spy Optic and its products throughout the United States and the world." *Id*. "No other manufacturer lawfully uses the Spy Marks or any marks substantially similar to them in connection with similar types of goods." *Id*. Plaintiff "suffers irreparable harm to its goodwill as well as a direct monetary loss any time any third parties, including Defendant, sell counterfeit and infringing goods bearing trademarks identical or substantially indistinguishable from Spy Marks." *Id*.

"Defendant is an online retailer of various brand-name products including clothing, accessories, and home décor via its website, www.areatrend.com …." *Id*. at 5. "Defendant has purchased, advertised, offered for sale, and/or sold eyewear bearing the Spy Marks" on its website, despite not being "an authorized retailer of Spy Optic® branded goods." *Id*.

2

3:19-cv-01770-WQH-BLM

> [I]t is reasonable to conclude that these goods are either counterfeit, infringing, obtained from entities who are prohibited from selling said goods to Defendant pursuant to the contractual relationship they have with Plaintiff regarding the distribution of goods as described above, or a combination thereof.

*Id*. Defendant has "received actual notice to cease and desist from its improper acquisition and deceptive promotion and sale of products bearing the Spy Marks …." *Id*. at 5-6. Defendant continues to "wrongfully purchase, advertise, promote, offer for sale, and/or sell" eyewear bearing the Spy Optics trademarks "on its website." *Id*. at 6.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a complaint for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). In opposing a defendant's Rule 12(b)(2) motion, "the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (citation omitted). Where the court considers the motion without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010), abrogated on other grounds as recognized by *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017)). "The plaintiff cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true." *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). "[W]e may not assume the truth of allegations in a pleading which are contradicted by affidavit ... but we resolve factual disputes in the plaintiff's favor." *Id.* (alteration in original) (internal quotation marks, quotation, and citation omitted). In other words, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (citation omitted).

## CONTENTIONS OF THE PARTIES

Defendant contends that Plaintiff's Complaint should be dismissed for lack of personal jurisdiction. Defendant contends that the maintenance of an interactive website is insufficient to support general jurisdiction over a foreign defendant. Defendant asserts that it has no employees or offices in California. Defendant asserts that it derives a trivial amount of sales from California. Defendant contends that this Court lacks specific jurisdiction. Defendant contends that it has not purposefully directed activities at California or purposefully availed itself of the privilege of conducting activities in California. Defendant contends that it has no California contacts that could be the but-for cause of Plaintiff's alleged injury. Defendant contends that the exercise of jurisdiction in California would be constitutionally unreasonable.

Plaintiff contends that there is general jurisdiction over Defendant because Defendant operates a highly interactive website through which California consumers can purchase products. Plaintiff contends that there is specific jurisdiction over Defendant. Plaintiff contends that the highly commercial nature of Defendant's website constitutes purposeful availment. In the alternative, Plaintiff contends that the purposeful availment element is satisfied based on Defendant's tortious conduct directed at the forum. Plaintiff contends that Defendant committed an intentional act expressly aimed at California causing foreseeable harm to Plaintiff in California by continuing to sell and ship eyewear bearing the Spy Marks to California after receiving a cease and desist letter from Plaintiff. Plaintiff contends that Defendant has failed to meet its burden of showing that the exercise of personal jurisdiction would be unreasonable.

## DISCUSSION

"Federal courts apply state law to determine the bounds of their jurisdiction over a party." *Axiom Foods*, 874 F.3d at 1067 (citation omitted). "California authorizes its courts 'to exercise jurisdiction to the full extent that such exercise comports with due process.'" *Id*. (citation omitted); *see also* Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of

the United States."). "Accordingly, 'the jurisdictional analyses under [California] state law and federal due process are the same.'" *Axiom Foods*, 874 F.3d at 1067 (quoting *Mavrix Photo*, 647 F.3d at 1223) (alteration in original). "There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant–general jurisdiction and specified jurisdiction." *Boschetto*, 539 F.3d at 1016.

### 1. General Jurisdiction

"[A] finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities in the world." *Schwarzenegger*, 374 F.3d at 801 (citation omitted). The standard for general jurisdiction "is an exacting standard …." *Id*. (citation omitted). For general jurisdiction to exist, a defendant's affiliations with the forum state must be "so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). To determine whether a nonresident defendant's contacts are sufficiently substantial, continuous, and systematic, the Court of Appeals considers their "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets …." *Tuazon v. R.J. Reynolds Tobacco Co.,* 433 F.3d 1163, 1172 (9th Cir. 2006). In the case of a corporation, "[t]he paradigmatic locations where general jurisdiction is appropriate over a corporation are its place of incorporation and its principal place of business." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (citing *Daimler,* 571 U.S. at 137). "Only in an 'exceptional case' will general jurisdiction be available anywhere else." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (quoting *Daimler,* 571 U.S. at 139 n. 19).

The Court of Appeals has found that "t[h]e level of interactivity of a nonresident defendant's website provides limited help in answering the distinct question whether the defendant's forum contacts are sufficiently substantial, continuous, and systematic to justify general jurisdiction." *Mavrix Photo,* 647 F.3d at 1227 (citation omitted). "Interactive websites where a user can exchange information with the host computer … are

now extremely common." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1075 (9th Cir. 2011) (internal quotation marks and citation omitted). "If the maintenance of an interactive website were sufficient to support general jurisdiction in every forum in which users interacted with the website, 'the eventual demise of all restrictions on the personal jurisdiction of state courts' would be the inevitable result." *Id*. at 1075-76 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980)).

Defendant is "an Ohio limited liability company with its principal place of business located [in] North Canton, OH …." Kasper Decl. ¶ 3, ECF No. 7-2 at 2. Defendant "is not and never has been registered to do business in California." *Id*. ¶ 4, ECF No. 7-2 at 2. Defendant does not have any "executives or employees [who] regularly travel to California for business purposes." *Id*. ¶ 5, ECF No. 7-2 at 2. Defendant "does not advertise nor market products in California." *Id*. ¶ 6, ECF No. 7-2 at 2. Defendant "does not have any offices, sales representatives, warehouse facilities, suppliers, toll free telephone numbers or other business associations in California." *Id*. ¶ 7, ECF No. 7-2 at 2.

The "operation of an interactive website—even a 'highly interactive' website—does not confer general jurisdiction." *Mavrix Photo*, 647 F.3d at 1226; *see also CollegeSource*, 653 F.3d at 1075-76 ("If the maintenance of an interactive website were sufficient to support general jurisdiction in every forum in which users interacted with the website, 'the eventual demise of all restrictions on the personal jurisdiction of state courts' would be the inevitable result."). The Court concludes that Plaintiff has failed to present sufficient evidence to meet the "exacting standard" necessary to establish general jurisdiction. *Schwarzenegger*, 374 F.3d at 801 (citation omitted).

**2. Specific Jurisdiction**

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Axiom Foods*, 874 F.3d at 1068 (quoting *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014)). "Two principles animate the 'defendant-focused' inquiry." *Id.* (quoting *Walden*, 571 U.S. at 284). "First, the relationship between the nonresident defendant, the

forum, and the litigation 'must arise out of contacts that the defendant *himself* creates with the forum state.'" *Id.* (quoting *Walden*, 571 U.S. at 284) (emphasis in original). "Second, the minimum contacts analysis examines 'the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" *Id.* (quoting *Walden*, 571 U.S. at 285). "It follows that 'a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.'" *Id.* (quoting *Walden*, 571 U.S. at 286).

"In a specific jurisdiction inquiry, we consider the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006). "A strong showing on one axis will permit a lesser showing on the other." *Id.* "While 'a single act can support jurisdiction'" in a tort case, "the act must first 'create[ ] a substantial connection with the forum.'" *Axiom Foods*, 874 F.3d at 1068. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985)) (alteration in original) (internal quotation marks omitted). "Put differently, 'some single or occasional acts related to the forum may not be sufficient to establish jurisdiction if their nature and quality and the circumstances of their commission create only an attenuated affiliation with the forum.'" *Id.* (quoting *Burger King*, 471 U.S. at 475 n.18) (internal quotation marks omitted). "A defendant's 'random, fortuitous, or attenuated contacts' will not suffice." *Id.* (quoting *Walden*, 571 U.S. at 286) (internal quotation marks omitted).

The Court of Appeals employs a three-prong test to assess whether a defendant's contacts with the forum state are sufficient to subject it to specific jurisdiction:

(1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail[ ] himself of the privileges of conducting activities in the forum";
(2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and
(3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable."

*Id.* (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)) (alteration in original). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802). "If the plaintiff meets that burden, 'the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable.'" *Id.* at 1068-69 (quoting *Burger King*, 471 U.S. at 476-78) (internal quotation marks omitted).

### a. Purposeful Direction

For causes of action sounding in tort, the Court of Appeals applies the purposeful direction test, rather than the purposeful availment test, which generally applies to claims arising from a contract. *See id.* at 1069 ("Where, as here, a case sounds in tort, we employ the purposeful direction test."). Alleged trademark infringement qualifies as tortious conduct under the *Calder* effects test. *See Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019-20 (9th Cir. 2002) (applying *Calder* effects test to case involving trademark infringement). The purposeful direction test, "often referred to as the 'effects' test, derives from *Calder v. Jones*, 465 U.S. 783 … (1984)." *Axiom Foods*, 874 F.3d at 1069 (citation omitted). To satisfy the *Calder* purposeful direction test, "[t]he defendant must have '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* (citation omitted).

### 1) Intentional Act

The first prong of the purposeful direction inquiry requires that the defendant committed an intentional act. The Court of Appeals "construe[s] 'intent' in the context of the 'intentional act' test as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806.

Plaintiff alleges that "Defendant has purchased, advertised, offered for sale, and/or sold eyewear bearing the Spy Marks" on its website, despite not being "an authorized retailer of Spy Optic® branded goods." (ECF No. 1 at 5). Plaintiff alleges that Defendant

8

continues to "wrongfully purchase, advertise, promote, offer for sale, and/or sell" eyewear bearing the Spy Optics trademarks "on its website." *Id*. at 6.

Plaintiff submitted supporting exhibits of Defendant's website from November 12, 2019 featuring eyewear bearing the Spy Marks (Ex. A to Blakley Decl., ECF No. 12-1 at 6-8) and Defendant's Amazon website from November 18, 2019 featuring eyewear bearing the Spy Marks (Ex. G to Blakley Decl., ECF No. 12-1 at 32-45). Plaintiff submitted a supporting exhibit of Defendant's website from November 12, 2019 featuring "Add to Cart" and "Buy Now" options, which facilitate customer purchases. (Ex. B to Blakley Decl., ECF No. 12-1 at 10). Plaintiff submitted a supporting exhibit of Defendant's website from November 12, 2019 featuring the "Contact Us!" webpage, which lists Defendant's phone numbers, email address, and live chat option. (Ex. C to Blakley Decl., ECF No. 12-1 at 13). Plaintiff submitted a supporting exhibit of Defendant's website from November 12, 2019 featuring the "Sign Up" webpage, which allows customers to create an account with Defendant. (Ex. D to Blakley Decl., ECF No. 12-1 at 16). This constitutes prima facie evidence of intentional acts within the meaning of *Calder*. The Court finds that Plaintiff has carried the burden to show an intentional act by Defendant. Plaintiff has made a prima facie showing that Defendant advertised and sold eyewear bearing the Spy Marks. *Loomis v. Slendertone Distribution, Inc.*, No. 3:19-cv-854-MMA (KSC), 2019 WL 5790136, at *10 (S.D. Cal. Nov. 6, 2019) ("Because Defendants developed, advertised, and sold the product, the Court finds Plaintiff has carried her burden to show an intentional act by Defendant."). The Court concludes that the first prong of the *Calder* test is satisfied.

### 2) Express Aiming

The second prong of the purposeful direction inquiry is whether the defendant expressly aimed its conduct at the forum state. A plaintiff must demonstrate that California is the "focal point" of both the claims and the harm suffered. *Axiom Foods*, 874 F.3d at 1071 (quoting *Walden*, 571 U.S. at 287). A plaintiff must prove that "the 'effects' caused by the defendants' [conduct]—*i.e.*, the injury to the plaintiff[] …—connected the defendants' conduct to *California*, not just to a plaintiff who lived there." *Walden*, 571

U.S. at 288 (emphasis in original). The express aim of the defendant must pertain to the forum state, "not the defendant's contacts with a resident of the forum." *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015). A plaintiff does not show express aiming if "none of [the] challenged conduct ha[s] anything to do with California itself." *Id.* at 1215 (quoting *Walden*, 571 U.S. at 289). A plaintiff does not demonstrate express aiming by alleging injuries that are "entirely personal to him and would follow him wherever he might choose to live or travel" and are "not tethered to California in any meaningful way." *Id.*

The Court of Appeals has explained that

> we have struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed…. On the one hand, we have made clear that "maintenance of a passive website alone cannot satisfy the express aiming prong." … On the other, we have held that "operating even a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient." … In determining whether a nonresident defendant has done "something more," we have considered several factors, including the interactivity of the defendant's website, … the geographic scope of the defendant's commercial ambitions, … and whether the defendant "individually targeted" a plaintiff known to be a forum resident ….

*Mavrix Photo*, 647 F.3d at 1229 (citations omitted). The Court of Appeals has further explained that

> We have held that "individualized targeting" satisfies the express aiming requirement…. In the context of copyright infringement, we have held that a defendant's "alleged willful infringement of [a plaintiff's] copyright, and its knowledge of both the existence of the copyright and the forum of the copyright holder," established "individualized targeting." … In *Walden*, the Supreme Court rejected our conclusion that the defendants' "knowledge of [the plaintiffs'] 'strong forum connections,'" plus the "foreseeable harm" the plaintiffs suffered in the forum, comprised sufficient minimum contacts…. The Court found that our approach "impermissibly allow[ed] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." … The Court made clear that we must look to the defendant's "own contacts" with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum…. Following *Walden*, we now hold that while a theory of individualized targeting may remain relevant to the minimum contacts

inquiry, it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what *Walden* requires.

*Axiom Foods*, 874 F.3d at 1069-70 (citations omitted).

Plaintiff alleges that it "is incorporated under the laws of the state of California with a principal place of business located [in] … Carlsbad, California …." (ECF No. 1 at 2). Plaintiff alleges that Defendant "is a limited liability company duly organized and existing under the laws of the State of Ohio with a principal place of business located [in] … North Canton, Ohio …." *Id*. Plaintiff alleges that Plaintiff "served Defendant with a cease and desist letter informing Defendant that '*[a]ll Spy Optic authorized sources are strictly prohibited from transshipping and/or reselling any Spy Optic-branded products to any entity that sells such products*'" on December 20, 2018. *Id*. at 9 (emphasis in original). Plaintiff alleges that "[t]he letter further requested that Defendant cease and desist selling Spy Optic branded products." *Id*. Plaintiff alleges that "[d]espite having received actual notice to cease and desist from its improper acquisition and deceptive promotion and sale of products bearing the Spy Marks, Defendant has continued to wrongfully purchase, advertise, promote, offer for sale, and/or sell" eyewear bearing the Spy Optics trademarks "on its website." *Id*. at 5-6.

In his declaration, Plaintiff's Counsel states that

> [Plaintiff] is a corporation organized and existing under the laws of the state of California with an office and principal place of business in Carlsbad, California.

Blakley Decl. ¶ 2, ECF No. 12-1 at 2. In his declaration, Plaintiff's Vice President of Revenue states that

> On February 3, 2017 I made two purchases of [eyewear bearing the Spy Optics trademarks] from Areatrend via the Areatrend storefront on Amazon, which were shipped and delivered to me in Carlsbad California.

(ECF No. 13 at 2). Plaintiff's Vice President of Revenue cites to a supporting exhibit of a purchase receipt from February 2, 2017 featuring a February 3, 2017 shipping date; the

11

name, description, and price of two items; a Carlsbad, California shipping address; and payment and billing information. Ex. A to Ninegar Decl., ECF No. 13-1 at 2.

In his declaration, Plaintiff's Counsel states that

> Despite having received actual notice to cease and desist from its improper acquisition and deceptive promotion and sale of products bearing the Spy Marks, Defendant has continued to wrongfully purchase, advertise, promote, offer for sale, and/or sell [eyewear bearing the Spy Optics trademarks] on its website.

Blakley Decl. ¶ 12, ECF No. 12-1 at 4.

Plaintiff submitted a supporting exhibit of Plaintiff's cease and desist letter sent to Defendant on December 20, 2018. Ex. E to Blakley Decl., ECF No. 12-1 at 19-20. The cease and desist letter is addressed to "Defendant's Chief Executive Officer" from "Brent Blakely of the Blakely Law Group." *Id*. at 19. The cease and desist letter states, in relevant part,

> We are counsel for Spy Optic ("Spy Optic")…. Spy Optic eyewear is being advertised, offered for sale, and sold on Area Trend's website which it did not receive directly from Spy Optic. Consequently, it is reasonable to conclude that the unauthorized Spy Optic eyewear sold by Area Trend is either counterfeit or was obtained from entities who are prohibited from selling said goods to Area Trend pursuant to the contractual relationship they have with Spy Optic regarding the distribution of goods as described above. To the extent you're are not already on notice, you are hereby put on notice of Spy Optic's contractual relationship with its authorized sources, and you will be liable for all damages sustained as a result of further interference with these contracts. Based on the foregoing, we hereby demand on behalf of Spy Optic that Area Trend:
> (1) Immediately cease and desist further purchase, advertisement, marketing, promotion, distribution, offering for sale, and/or sale Spy Optic branded products;
> (2) Surrender your remaining inventory of Spy Optic branded products to Spy Optic; and
> (3) Provide full disclosure, including production of documents, regarding Area Trend's source for Spy Optic branded products, including information regarding (a) from whom Area Trend obtained Spy Optic products; (b) amount purchased; (c) amount sold; and (d) amount in current inventory.

*Id.* at 19-20. The letterhead lists the following California address for the Blakely Law Group: "1334 PARKVIEW AVENUE, SUITE 280, MANHATTAN BEACH, CALIFORNIA 90266." *Id.* at 19.

In his declaration, Defendant's Chief Executive Officer states that

> I am the Chief Executive Officer of Areatrend, which is an Ohio limited liability company with its principal place of business located at 7584 Whipple Ave. NW, North Canton, OH 44720. Areatrend is not and never has been registered to do business in California. No executives or employees of Areatrend regularly travel to California for business purposes. Areatrend does not advertise nor market products in California. Areatrend does not have any offices, sales representatives, warehouse facilities, suppliers, toll free telephone numbers or other business associations in California. AreaTrend sells products through it own website www.areatrend.com, as well as through third-party online retailers. Areatrend's website allows a third-party to purchase a product, but Areatrend does not maintain a mailing list, membership club, or any other method of creating an ongoing relationship with anyone, much less anyone from California. Areatrend's sales to California are nominal. Total sales to California of all products Areatrend sells through all channels represent 4.7 % of gross sales. Sales of Spy Optic products to California from all channels represent .0018 % of total sales. Areatrend does nothing to expressly target the California market.

Kasper Decl. ¶¶ 3-10, ECF No. 7-2 at 2.

In *Graco*, a trademark infringement case, this Court held that

> The Court finds that the record contains evidence tending to show that Defendants' products were sold to California customers. The record shows that Defendants received a letter regarding infringement and a possible California lawsuit. The record shows that Plaintiff is a Minnesota company and Defendants conduct their business in Texas. The record shows that Plaintiff hired investigators to purchase and receive the products in California. The record does not show that Defendants' business is targeted at a California-specific market or industry.… Plaintiff (a Minnesota company) sending a cease and desist letter to Defendants (based in Texas) regarding infringement and a possible California lawsuit cannot demonstrate express aiming in this case.

*Graco Minnesota Inc. v. PF Brands, Inc.*, No. 18-cv-1690-WQH-AGS, 2019 WL 1746580, at *6 (S.D. Cal. Apr. 17, 2019) (citations omitted).

In this case, the evidence in the record shows that Plaintiff is a California company and that Defendant is an Ohio company. *See* Blakley Decl. ¶ 2, ECF No. 12-1 at 2; Kasper Decl. ¶ 3, ECF No. 7-2 at 2. The evidence in the record shows that Defendant sold products to Plaintiff in California. *See* Blakley Decl. ¶ 13, ECF No. 12-1 at 4; Ex. A to Ninegar Decl., ECF No. 13-1 at 2. The evidence in the record shows that Plaintiff sent a cease and desist letter to Defendant on December 20, 2018. *See* Ex. E to Blakley Decl., ECF No. 12-1 at 19-20.

However, the evidence in the record does not establish that Defendant's business is targeted at a California-specific market or industry. The record does not show that California is the "focal point" of both the infringement claims and the alleged harm in this case. *Axiom Foods*, 874 F.3d at 1070-71 (sending a trademark-violating email to 343 recipients, including 10 California residents and 55 with California companies, did not expressly aim at California because "[i]t can hardly be said that 'California [wa]s the focal point both of the [newsletter] and of the harm suffered'") (second and third alterations in original) (citation omitted). In other cases, district courts have found express aiming because of additional factors, none of which are present in this case. *See e.g., Loomis*, 2019 WL 5790136, at *12 (designating an agent for service of process in California; registering with the California Secretary of State; and placing products "in the hands of California-specific individuals"); *Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1139 (S.D. Cal. 2016) (selling more products to consumers in California than in any other state; having more associates in California than in any other state; holding training workshops, promotional tours, and annual conferences in California; and maintaining a website "contain[ing] a page directed specifically to California consumers regarding [Defendant]'s compliance with a California consumer protection statute"); *Cree, Inc. v. Fastbuy, Inc.*, No. CV 18-01802-CJC(ASx), 2018 WL 4850404, at *4 (C.D. Cal. July 16, 2018) (importing goods that Defendant knows are counterfeit into California ports; storing the goods in warehouses throughout California; and distributing those goods to buyers).

In this case, the only reference to California in Plaintiff's cease and desist letter is found in the letterhead, which lists a California address for the Blakely Law Group. Defendant's sale and shipment of two allegedly infringing products to California on February 3, 2017 occurred before Plaintiff's cease and desist letter was sent on December 20, 2018. The Court concludes that the cease and desist letter and the two purchases do not show that the challenged conduct is connected to California. The Court concludes that Plaintiff fails to make a prima facie showing that Defendant engaged in tortious conduct expressly aimed at California. The Court need not determine whether specific personal jurisdiction is lacking for other reasons. *See Picot*, 780 F.3d at 1215 n.4 ("Because Picot has not established the second prong of our purposeful direction test, we need not address the third prong.") (citation omitted).

### 3. Jurisdictional Discovery

Plaintiff contends that Defendant's claim that its total sales to California represent only 4.7% of gross sales is misleading. Plaintiff asserts that it would need to perform discovery on Defendant's sales to California in order to establish the extent of Defendant's contacts with California. Plaintiff requests leave to conduct jurisdictional discovery. Defendant contends that the Court should deny any request by Plaintiff for jurisdictional discovery because Plaintiff's allegations of jurisdiction have been denied by Defendant and remain unrebutted.

"A court may permit discovery to aid in determining whether it has in personam jurisdiction…. In granting discovery, the trial court is vested with broad discretion …." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977) (citation omitted). "[W]here pertinent facts bearing on the question of jurisdiction are in dispute, discovery should be allowed." *Am. W. Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989) (citation omitted); *see also Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007) (stating that discovery is warranted only if the plaintiff "make[s] a 'colorable' showing," which is "less than a prima facie showing," of "'some evidence' tending to establish personal jurisdiction over the defendant") (citations omitted).

However, "where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (citation omitted). A court need not grant discovery based on "purely speculative allegations of attenuated jurisdictional contacts." *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011).

In this case, the Court finds that the discovery Plaintiff seeks regarding additional California and other sales information would not change the jurisdictional analysis. *See Adobe Sys. Inc. v. Cardinal Camera & Video Ctr., Inc.*, No. 15-cv-02991-JST, 2015 WL 5834135, at *5 (N.D. Cal. Oct. 7, 2015) (stating that "a sale into the forum is not a substantial contact where it 'involved the forum state only because that is where the purchaser happened to reside.' … District courts have extended this principle to cases involving multiple sales entering the forum simply because the purchasers happened to live in the forum") (citing cases where California sales constituted 10% and 1.6% of total sales did not demonstrate purposeful direction). Plaintiff's "claim of personal jurisdiction appears to be both attenuated and in the face of specific denials" by Defendants. *Pebble Beach*, 453 F.3d at 1160. Plaintiff fails to make a colorable showing of personal jurisdiction in this case. *See Mitan*, 497 F. Supp. 2d at 1119. The Court declines to exercise its discretion to permit jurisdictional discovery.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Dismiss filed by Defendant AreaTrend, LLC (ECF No. 7) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's request for jurisdictional discovery is DENIED.

The case is dismissed without prejudice.

Dated: April 13, 2020

*[signature]*
Hon. William Q. Hayes
United States District Court